1  NOAH PERCH-AHERN (SBN 262164)
   NPerchAhern@ggfirm.com
2  BRIAN E. MOSKAL (SBN 240704)
   BMoskal@ggfirm.com
3  GREENBERG GLUSKER FIELDS CLAMAN &
   MACHTINGER LLP
4  2049 Century Park East, Suite 2600
   Los Angeles, California  90067
5  Telephone:  310.553.3610
   Fax:  310.553.0687
6
7  Attorneys for Plaintiffs Amir "Michael" Karimi and
   Trans Telecom Company, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR "MICHAEL" KARIMI; TRANS TELECOM COMPANY, INC. <br><br> Plaintiffs, <br><br> v. <br><br> BEHNAM RAFALIAN; ROYA AKHAVAN; DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> (1) COST RECOVERY UNDER CERCLA, 42 U.S.C. § 9607(a) <br><br> (2) DECLARATORY RELIEF UNDER CERCLA, 42 U.S.C. § 9613(g)(2), AND FEDERAL DECLARATORY JUDGMENT ACT <br><br> (3) CONTRIBUTION/INDEMNITY UNDER HSAA, Cal. Health & Safety Code § 25300 <br><br> (4) DECLARATORY RELIEF UNDER HSAA, Cal. Health & Safety Code § 25300 <br><br> (5) CONTINUING PUBLIC NUISANCE <br><br> (6) CONTINUING PRIVATE NUISANCE <br><br> (7) CONTINUING PUBLIC NUISANCE PER SE <br><br> (8) CONTINUING PRIVATE NUISANCE PER SE <br><br> (9) NEGLIGENCE <br><br> (10)  UNFAIR COMPETITION LAW <br><br> (11)  TRESPASS <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Amir "Michael" Karimi and Trans Telecom Company, Inc. hereby allege as follows:

## NATURE OF ACTION

1. This is a civil action seeking the recovery of response costs, damages, injunctive relief, declaratory relief, attorneys' fees, and other costs and relief as a result of environmental contamination of real property in Culver City, California, for which Defendants are legally responsible. The two properties at issue in this action are located at 5977 Washington Boulevard, Culver City, California 90232 ("Source Property") and 5969 Washington Boulevard, Culver City, California 90232 ("Threatened Property").

## THE PARTIES

2. Plaintiff Michael Karimi ("Karimi") is an individual who resides in Los Angeles County, California and in this District.

3. Plaintiff Trans Telecom Company, Inc. ("Trans Telecom") is a California corporation.

4. Defendant Behnan Rafalian ("Rafalian") is an individual who owns the Source Property and, upon information and belief, resides in Los Angeles County, California and in this District.

5. Defendant Roya Akhavan ("Akhavan") is an individual who owns the Source Property and, upon information and belief, resides in Los Angeles County, California and in this District.

6. Plaintiffs are presently ignorant of the true names and capacities of the defendants sued herein as Does 1-10 and, therefore, sues these defendants by these fictitious names. Plaintiffs will amend or seek leave to amend this Complaint to set forth the true names and capacities of Does 1-10 when Plaintiffs ascertain them. Plaintiffs are informed and believe that each of these fictitiously named defendants is in some manner liable for the conduct, acts, injuries, response costs, and/or damages set forth herein.

**VENUE AND JURISDICTION**

7. This Court has federal question jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims asserted herein, which are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Pursuant to 28 U.S.C. § 2001, this Court has jurisdiction over the federal Declaratory Judgment Act claim asserted herein.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 42 U.S.C. § 9613(b) because this is the judicial district (1) in which a substantial part of the events or omissions giving rise to the claims occurred, including the releases of hazardous substances at issue; (2) where the Source Property and Threatened Property are situated; and (2) where, upon information and belief, Defendants reside, may be found, and/or have a principal office.

**FACTUAL BACKGROUND**

9. Defendants Rafalian and Akhavan acquired the Source Property on or about June 28, 2002 and continue to own it.

10. Plaintiff Karimi owns the Threatened Property.

11. Plaintiff Trans Telecom leases the Threatened Property from Karimi and operates a business thereon.

**Environmental Issues**

12. A business known as Apex Metal Polishing a/k/a Apex Polishing Company ("Apex") historically operated at the Source Property. Apex conducted metal polishing and related operations at the Source Property that involved the use of hazardous substances including, without limitation, tetrachloroethylene ("PCE"), trichloroethylene ("TCE"), heavy metals, and other hazardous substances.

13. Testing of soil, soil vapor, and groundwater at the Source Property has revealed concentrations of PCE, TCE, and other hazardous substances in excess of standards promulgated by state and federal environmental agencies. These environmental impacts at the Source Property are the result of releases and threatened releases in the form of spills, leaks, discharges, and/or

other releases of hazardous substances caused by Apex during its operations at the Source Property.

14. Due to the environmental condition of the Source Property, the California Department of Toxic Substance Control ("DTSC") has exercised jurisdiction over that property. On March 28, 2007, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order ("ISE Order") to Defendants Rafalian and Akhavan, naming them as responsible parties to address environmental conditions at the Source Property. DTSC found in the ISE Order that the environmental condition of the Source Property pose an imminent and substantial endangerment to human health or the environment.

15. The ISE Order "applies to the [Source Property] and to the soil and groundwater contamination that resulted from activities on the [Source Property] and that has migrated from the [Source Property] extent."

16. In the ISE Order, DTSC found that each of Defendants Rafalian and Akhavan "is a responsible party or liable person defined in California Health and Safety Code section 25323.5" for environmental contamination at and emanating from the Source Property.

17. In the ISE Order, DTSC found that "APEX Metal Polishing . . . operated at the [Source Property]. Hazardous substances were used and disposed of at the [Source Property] during the period of APEX operations." DTSC also found that "[a] Notice of Violation issued by the Los Angeles County Fire Department cited APEX for significant cracks throughout the building foundation and walls."

18. In the ISE Order, DTSC found that Defendants Rafalian and Akhavan "hire[d] a consultant named ENCON to conduct environmental investigations on October 14, 2004 and January 24, 2005 which showed that hazardous substances exist in the soil and groundwater at the" Source Property.

19. In the ISE Order, DTSC found that ENCON's sampling detected arsenic in soil at concentrations up to 33 milligrams per kilogram ("mg/kg"), lead in soil at concentrations up to 189 mg/kg, PCE in soil at concentrations up to 21,337 micrograms per kilogram ("µg/kg"), and TCE in soil at concentrations up to 18,410 µg/kg, among other hazardous substance

1  concentrations. DTSC also found that ENCON's sampling detected PCE in groundwater at
2  concentrations up to 418.8 micrograms per liter ("µg/L"), TCE in groundwater at concentrations
3  up to 15,331 µg/L, cis-1,2-dichloroethene in groundwater at concentrations up to 2,921.7 µg/L,
4  and trans-1,2-dichloroethene at concentrations up to 66.5 µg/L, all of which exceed regulatory
5  standards.

6  20. In the ISE Order, DTSC found that "a potential exists for a complete exposure
7  pathway . . . at the [Source Property]. The health effects for the elevated hazardous substances
8  found at the [Source Property] are volatile organic compounds (VOCs) which include
9  tetrachloroethylene (PCE), Trichlorethylene (TCE), 1,1-Dichloroethane (1,1-DCA), 1,1-
10 Dichlorethene (1,1-DCE), 1,2-Dichloroethene, lead and arsenic. Health effects caused by VOCs
11 are eye, nose, and throat irritation; headaches, loss of coordination, nausea; damage to liver,
12 kidney, and central nervous systems. Some organics can cause cancer in animals; some are
13 suspected or known to cause cancer in humans. Key signs or symptoms associated with exposure
14 to VOCs include conjunctival irritation, nose and throat discomfort, headache, allergic skin
15 reaction, dyspnea, declines in serum cholinesterase levels, nausea, emesis, epistaxis, fatigue,
16 dizziness. . . . Lead is a bioaccumulative substance. Lead is a reproductive and developmental
17 toxin. Lead is [a] known human carcinogen. Lead poisoning is one of the most commonly
18 reported occupational diseases among adults due to inhalation of dust and fumes. Some lead
19 compounds are carcinogenic to lungs and kidneys. Possible exposure pathways include ingestion
20 and inhalation. . . . Chronic poisoning effects in children include weight loss, weakness and
21 anemia."

22 21. In the ISE Order, DTSC found that "[t]he [Source Property] is not fenced and there
23 are indications that people trespass on the [Source Property]. The surrounding area contains
24 single and multi-family residences as well as commercial facilities. Groundwater beneath the
25 [Source Property] is approximately 20 feet below ground surface. People working on the [Source
26 Property] could be exposed to contaminants via dermal contact or via inhalation of volatile or
27 dust-borne contaminants. Excavation of soil in areas where contamination exists could expose
28

workers to contamination via dermal contact or via inhalation of contaminants, either from soil or groundwater."

22. In the ISE Order, DTSC found that "[i]f contaminated groundwater migrates, it could potentially result in exposure to workers on adjacent parcels to contaminants via inhalation of volatile contaminants."

23. In the ISE Order, DTSC found that the Source Property "is bordered to the north by a primary school ("Play Mountain Place") . . ." and that "[t]he area consists of commercial businesses and residential homes."

24. In the ISE Order, in addition to concluding that each of Defendants Rafalian and Akhavan "is a responsible party as defined by Health and Safety Code section 25323.5," DTSC also concluded that (1) "[e]ach of the substances listed" in the ISE Order "is a 'hazardous substance' as defined in Health and Safety Code section 25316"; (2) "[t]here has been a 'release' and/or 'threatened release' of hazardous substances listed in [the ISE Order] at the [Source Property], as defined in Health and Safety Code section 25320"; (3) "[t]he actual and threatened release of hazardous substances at the [Source Property] may present an imminent and substantial endangerment to the public health or welfare or to the environment"; and (4) "[r]esponse action is necessary to abate a public nuisance and/or to protect and preserve the public health."

25. In the ISE Order, DTSC also concluded: "Based on the foregoing findings of fact and conclusions of law, DTSC hereby determines that there may be an imminent and/or substantial endangerment to the public health or welfare or to the environment because of the release and/or threatened release of the hazardous substances at the [Source Property]."

26. In the ISE Order, DTSC required that "[a]n overall [Source Property] investigation and remediation strategy shall be developed by [Defendants Rafalian and Akhavan] in conjunction with DTSC which reflects program goals, objectives, and requirements. . . . An objective of the [Source Property] investigation shall be to identify immediate or potential risks to public health and the environment and prioritize and implement response actions . . . based on the relative risks at the [Source Property]."

27. In the ISE Order, DTSC promulgated "specified dates by which necessary corrective action shall be taken to remove the threat of a release, or dates by which the nature and extent of a release shall be determined and the [Source Property] adequately characterized, a remedial action plan prepared and submitted to DTSC for approval, and a removal or remediation action completed," all by Defendants Rafalian and Akhavan.

28. Defendants Rafalian and Akhavan have refused and failed to comply with DTSC's ISE Order to conduct further environmental testing at the Source Property, environmental testing at the Threatened Property, and remediation necessary to abate the imminent and substantial endangerment posed by the Source Property.

29. Defendants Rafalian and Akhavan have also refused and failed to remediate or abate the hazardous substances at the Source Property sufficient to obtain a no further action determination from DTSC of the Source Property, resulting in continued actual or threatened migration of hazardous substances in soil, soil vapor, and/or groundwater from the Source Property to the Threatened Property.

30. Upon information and belief, in or about 2019, Defendants Rafalian and Akhavan hired a contractor to pump groundwater from beneath the Source Property and discharge it to the municipal storm sewer system at or near the Source Property. Upon information and belief, this work was conducted without any government permits or regulatory oversight, was stopped when brought to the attention of one or more government entities, and may have resulted in exacerbation of environmental contamination at the Source Property and/or Threatened Property by bringing to the ground surface and spread groundwater containing hazardous substances in excess of regulatory standards.

31. In or about 2019, Defendants Rafalian and Akhavan hired a contractor to excavation soil at the Source Property. Soil was thereafter excavated and hauled off-site. Upon information and belief, this occurred without any permits or regulatory oversight by DTSC.

32. DTSC has issued multiple Notices of Proposed Determination of Non-Compliance to Defendants Rafalian and Akhavan due to their failure to fully comply with the ISE Order.

33. Although it has issued the ISE Order and multiple notices regarding non-compliance to Defendants Rafalian and Akhavan, DTSC has not taken sufficient follow-up enforcement action to result, to date, in the remediation of the Source Property sufficient to issue a no further action determination for the Source Property, nor has DTSC taken further action to require Defendants Rafalian and Akhavan to conduct environmental testing at the Threatened Property.

34. As a result of the failure and refusal of Defendants Rafalian and Akhavan to conduct environmental testing at the Threatened Property, and the imminent and substantial endangerment posed by the Source Property, Plaintiff Trans Telecom has engaged an environmental consultant to perform environmental investigation at the Threatened Property and is bringing this lawsuit to assure that Defendants contribute to any necessary environmental response costs and other damages associated with the Source Property.

**Subsidence Issues**

35. Upon information and belief, the groundwater pumping and/or soil excavation conducted by contractors hired by Defendants Rafalian and Akhavan has resulted in dewatering the subsurface of the Source Property and the Threatened Property. Upon information and belief, this has resulted in subsidence of the soil under the building at the Threatened Property, which is owned by Plaintiff Karimi and leased by Plaintiff Trans Telecom. Upon information and belief, this soil subsidence has, in turn, caused and/or exacerbated damage to the land, building, and/or other structures at the Threatened Property.

**FIRST CAUSE OF ACTION**

CERCLA Cost Recovery Under 42 U.S.C. § 9607(a)

(Against all Defendants)

36. Plaintiff incorporates all preceding paragraphs by reference as though fully set forth here.

37. Plaintiffs and Defendants, and each of them, is a "person" within the meaning of Section 101(21) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601(21).

38. The Source Property and anywhere contamination from the Source Property has come to be located, potentially including the Threatened Property, is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9).

39. Defendants Rafalian and Akhavan are each an "owner" or "operator" as defined in CERCLA Section 101(20)(A), 42 U.S.C. § 9601(20)(A).

40. One or more of the defendants named as Does 1-10 is an "operator" as defined in CERCLA Section 101(20)(A), 42 U.S.C. § 9601(20)(A), by virtue of conducting operations at the Source Property including, without limitation, soil dewatering and discharge and soil excavation and disposal, that resulted in the exacerbation, spread, or further migration of hazardous substances at and/or from the Source Property.

41. One or more of the defendants named as Does 1-10 arranged by contract or otherwise for the disposal of hazardous substances at or in the vicinity of the Source Property.

42. The VOCs and other substances released at the Source Property are "hazardous substances" as defined in CERCLA Section 101(14), 42 U.S.C. § 9601(14).

43. The releases and/or threatened releases of hazardous substances from the Source Property are causing Plaintiffs to incur response costs in a manner necessary and consistent with the National Contingency Plan, 40 Code of Federal Regulations ("CFR") Part 300 ("NCP"). Plaintiffs may continue to incur necessary costs of response within the meaning of CERCLA section 107(a), 42 U.S.C. § 9607(a), and consistent with the NCP, with respect to the Threatened Property as a result of the potential migration of hazardous substances from the Source Property.

44. Pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a), each of Defendants Rafalian and Akhavan and Does 1-10 is strictly and jointly and severally liable to Plaintiffs for all past and future response costs incurred in connection with the matters addressed herein.

## SECOND CAUSE OF ACTION

Declaratory Relief Under CERCLA, 42 U.S.C. § 9613(g)(2)

(Against all Defendants)

45. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

46. An actual, substantial, and justiciable controversy exists between Plaintiffs and each of Defendants Rafalian and Akhavan regarding their respective rights and obligations for the future response costs that may be incurred by Plaintiffs in connection with investigation and remediation of the Threatened Property.

47. Plaintiffs seek a declaratory judgment against each of Defendants Rafalian and Akhavan under CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201(a), that will be binding in any subsequent action to recover further response costs, holding each Defendant strictly liable for all further response costs to be incurred by Plaintiffs in connection with investigation and remediation of the Threatened Property.

## THIRD CAUSE OF ACTION

Contribution/Indemnity Under HSAA, Cal. Health & Safety Code § 25300

(Against all Defendants)

48. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

49. Section 25323.5(a) of the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), California Health and Safety Code section 25300 et seq., defines a "responsible party" and "liable person" to mean a person set forth in CERCLA, 42 U.S.C. § 9607(a). Defendants are each a "person" set forth in 42 U.S.C. § 9607(a) and are, therefore, a "liable person" under the HSAA, and are liable to Broan for response costs and other damages.

50. The Source Property is a "facility" within the meaning of CERCLA, 42 U.S.C. § 9601(9). Accordingly, the Source Property is a "site" within the meaning of the HSAA, California Health and Safety Code section 25323.9.

51. The substances released and detected at the Source Property are "hazardous substances" as defined by the HSAA, HSC § 25316.

52. Plaintiffs are incurring and may continue to incur response costs to investigation and remediate contamination at the Threatened Property that is emanating from the Source Property including, without limitation, site assessment, site characterization, site investigation,

site monitoring, PRP identification, and/or remedial costs in connection with the release, threatened releases, and/or disposal of hazardous substances at, to, or from the Source Property. Pursuant to the HSAA, California Health and Safety Code § 25363, Defendants are strictly liable for the response costs that are being and may be incurred by Plaintiffs.

53. Plaintiffs seek contribution and/or indemnity for all response costs it has incurred or may incur pursuant to the HSAA, HSC § 25363, which provides that "[a]ny person who has incurred removal or remedial action costs in accordance with this chapter or the federal act may seek contribution or indemnity from any person who is liable pursuant to this chapter."

## FOURTH CAUSE OF ACTION

Declaratory Judgment Under HSAA, California Health and Safety Code § 25300, et seq.

(Against all Defendants)

54. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

55. An actual, substantial, and justiciable controversy now exists between Plaintiffs, on the one hand, and Defendants, on the other hand, in that Plaintiffs contend, and Plaintiffs are informed and believe and thereon allege that Defendants deny or will deny that Defendants are each a person liable under the HSAA, California Health and Safety Code section 25300 et seq. to Plaintiffs for costs Plaintiffs have incurred or may incur in connection with investigation or remediation of releases of hazardous substances from the Source Property that have migrated to the Threatened Property, and for such other relief as the Court deems just and proper.

56. Plaintiffs desire a judicial determination of the respective rights and obligations of Plaintiffs and Defendants with respect to the response costs and other costs, expenditures, and damages that have been or may be incurred by Plaintiffs as alleged herein.

57. Pursuant to the HSAA, California Health and Safety Code section 25363, a declaratory judgment is necessary and appropriate because it will obviate the need for multiple lawsuits regarding costs of investigating and/or remediating the Threatened Property or otherwise responding, thereby providing a complete resolution of the differences between the parties in this action.

# FIFTH CAUSE OF ACTION

Continuing Public Nuisance

(Against all Defendants)

58. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

59. Defendants have owned, operated, and/or maintained the Source Property in such a manner that the contamination Defendants Rafalian and Akhavan detected more than 16 years ago has not been fully investigated or remediated and has instead been allowed by them to continue migrating in soil, soil vapor, and/or groundwater.

60. The contamination of the soil, soil vapor, and groundwater at and emanating from the Source Property constitutes a public nuisance. The contamination has migrated and is continuing to migrate through the environment and interferes with use and enjoyment of the Threatened Property and other nearby properties. Plaintiffs have not consented to the continuing acts of nuisance committed by Defendants.

61. By maintaining this public nuisance, Defendants have benefited monetarily from environmentally irresponsible handling of the contamination of the Source Property, including by performing unpermitted purported remediation efforts and/or other activities, and otherwise leaving contamination in place and allowing it to migrate through the environment.

62. This public nuisance affects a considerable number of persons, but it has caused special injury to Plaintiffs because the contamination is emanating from the soil, soil vapor, and groundwater beneath the Source Property, which is adjacent to the Threatened Property owned by Plaintiff Kamini and leased by Plaintiff Trans Telecom. Plaintiffs have suffered and will suffer special damages associated with the continuing nuisance including, without limitation, substantial costs of investigating, assessing, characterizing, and remediating the contamination.

63. Defendants are responsible and liable for this nuisance. Plaintiffs are therefore entitled to an award of damages according to proof at trial and an order requiring Defendants to abate the nuisance in accordance with all applicable laws, regulations, and orders.

## SIXTH CAUSE OF ACTION

Continuing Private Nuisance

(Against all Defendants)

64. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

65. Defendants have owned, operated, and/or maintained the Source Property in such a manner that the contamination Defendants Rafalian and Akhavan detected more than 16 years ago has not been fully investigated or remediated and has instead been allowed by them to continue migrating in soil, soil vapor, and/or groundwater.

66. The contamination of the Source Property for which Defendants are legally responsible has interfered with Plaintiffs' comfortable enjoyment and free use of the Threatened Property. The release, discharge, and migration of the contamination may also be injurious to human health at the Threatened Property.

67. Defendants' use and maintenance of the Source Property, including by allowing contamination to continue migrating at and from the Source Property, has created a nuisance within the meaning of Sections 3479 and 3481 of the California Civil Code.

68. Because of the continuous nature of the migration of the contamination, Defendants' actions and failures to act have resulted in a continuing nuisance upon the Source Property and Threatened Property that is abatable.

69. As a proximate result of the nuisance maintained by Defendants, Plaintiffs have been and will be damaged by incurring costs to investigate and otherwise respond to the contamination.

70. Plaintiffs are therefore entitled to an award of damages according to proof at trial and an order requiring Defendants to abate this nuisance associated with environmental contamination in accordance with all applicable laws, regulations, and orders.

71. Defendants have also owned, operated, and/or maintained the Source Property and conducted activities such as soil dewatering and excavation in such a manner that the soil at the

1  Threatened Property has experienced subsidence, causing damage to the land, building, and/or
2  other structures at the Threatened Property.

3  72.  This soil subsidence has interfered with Plaintiffs' comfortable enjoyment and free
4  use of the Threatened Property.

5  73.  Defendants' use and maintenance of and/or activities at the Source Property,
6  including by causing soil subsidence and associated damage at the Threatened Property, has
7  created a nuisance within the meaning of California Civil Code sections 3479 and 3481.

8  74.  Because of the nature of the subsidence and damaged caused thereby, Defendants'
9  actions and failures to act have resulted in a continuing nuisance upon the Threatened Property
10 that is abatable.

11 75.  As a proximate result of the nuisance maintained by Defendants, Plaintiffs have
12 been and will be damaged by incurring costs to address the soil subsidence and associated
13 damage at the Threatened Property.

14 76.  Plaintiffs are therefore entitled to an award of damages according to proof at trial
15 and an order requiring Defendants to abate the nuisance caused by this soil subsidence.

### SEVENTH CAUSE OF ACTION

Continuing Public Nuisance Per Se

(Against all Defendants)

19 77.  Plaintiffs re-allege and incorporates all preceding paragraphs by reference as
20 though fully set forth here.

21 78.  Defendants' conduct resulting in contamination of the Source Property and
22 potentially of the Threatened Property is a public nuisance per se.

23 79.  By maintaining a nuisance at and emanating from the Source Property in the form
24 of contamination that has not be remediated despite DTSC's ISE Order requiring Defendants to
25 do so, Defendants have violated California Health and Safety Code sections 5411 and Culver City
26 Municipal Code section 5.05.025.

## EIGHTH CAUSE OF ACTION

Continuing Private Nuisance Per Se

(Against all Defendants)

80. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

81. Defendants' conduct resulting in contamination of the Source Property and potentially of the Threatened Property is a nuisance per se.

82. By maintaining a nuisance at and emanating from the Source Property in the form of contamination that has not be remediated despite DTSC's ISE Order requiring Defendants to do so, Defendants have violated California Health and Safety Code sections 5411 and Culver City Municipal Code sections 5.05.025 and 5.05.045.

83. As a proximate result of the nuisance maintained by Defendants, Plaintiffs have been and will be damaged by incurring costs to investigate and otherwise respond to the contamination.

## NINTH CAUSE OF ACTION

Negligence

(Against all Defendants)

84. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

85. Defendants owed and continue to owe a duty to Plaintiffs and the public to use reasonable care to avoid discharging or releasing contamination into and/or from the soil, soil vapor, groundwater, storm sewers, and elsewhere at and from the Source Property, including any impacts to neighboring property including the Threatened Property, and had and have a duty to fully investigate and remediate the contamination at and emanating from the Source Property.

86. Defendants have breached their duty of reasonable care by negligently allowing the discharge or release of contamination into and/or from the soil, soil vapor, groundwater, storm sewers, and elsewhere at and from the Source Property and by failing to fully investigate and remediate the contamination at and emanating from the Source Property.

87. As a direct and proximate result of Defendants' failure to use reasonable care, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, including investigation and potential remediation costs and consequential losses and attorneys' fees.

88. Defendants also owed and continue to owe a duty to Plaintiffs to use reasonable care to avoid conducting soil dewatering and excavation activities at the Source Property that could cause subsidence of soil and resulting damage to the land, building, and/or other structures at the Threatened Property.

89. Defendants have breached their duty of reasonable care by negligently conducting soil dewatering and excavation activities at the Source Property that have caused subsidence of soil and resulting damage to the land, building, and/or other structures at the Threatened Property.

90. As a direct and proximate result of Defendants' failure to use reasonable care, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, including repair costs and consequential losses and attorneys' fees.

## TENTH CAUSE OF ACTION

Unfair Competition Law, California Business and Professions Code § 17200

(Against all Defendants)

91. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

92. Defendants have failed to fully investigate and remediate contamination at and emanating from the Source Property. Upon information and belief, Defendants have also engaged in substandard and/or unpermitted remediation attempts at the Source Property, including soil dewatering and soil excavation.

93. Defendants' actions and failures to act in failing to properly and fully investigate and remediate contamination at and emanating from the Source Property violates laws including, without limitation, California Health and Safety Code section 25355.5, as stated by DTSC in a July 15, 2010 Notice of Non-Compliance sent to Defendants Rafalian and Akhavan.

94. Defendants received significant monetary gain through their actions and failures to act to properly and fully investigate and remediate contamination at and emanating from the Source Property.

95. The actions and failures to act in failing to properly and fully investigate and remediate contamination at and emanating from the Source Property constitute and/or constituted unfair business practices as defined in California Business and Professions Code section 17200.

96. As a direct and proximate result of the unfair business practices of Defendants, Plaintiffs have suffered harm including, without limitation, damages in the form of costs to investigate and potentially remediate contamination at the Threatened Property emanating from the Source Property and harm to their property and/or property interests in the Threatened Property.

97. Defendants should, pursuant to California Business and Professions Code sections 17200 and 17203, be enjoined from continuing to engage in such unfair business practices and enjoined to ameliorate the effects of their past unfair business practices including, without limitation, by conducting the necessary on-site and off-site environmental investigation and remediation to abate the imminent and substantial endangerment at and emanating from the Source Property.

98. Plaintiffs have incurred and will continue to incur attorneys' fees, costs, and expenses to prosecute this action to stop the continuing unfair business practices of Defendants and to ameliorate the continuing effects of such past unfair business practices.

## ELEVENTH CAUSE OF ACTION

Continuing Trespass

(Against all Defendants)

99. Plaintiffs re-allege and incorporates all preceding paragraphs by reference as though fully set forth here.

100. In California, trespass is an unlawful interference with possession of property. A trespass is continuing if there is an intrusion under circumstances that indicate the trespass may be

discontinued or abated. Continuing trespasses are essentially a series of successive injuries, and the statute of limitations begins anew with each injury.

101. As a direct and proximate result of the acts or omissions of Defendants, upon information and belief, the Threatened Property has been physically and tortiously invaded by the migration of contaminants from the Source Property.

102. The intentional, reckless and/or negligent maintenance of, and operations on, the Source Property by Defendants, including their failure to fully investigate and remediate contamination at and emanating from the Source Property, has, upon information and belief, proximately caused the unauthorized and wrongful deposit of contaminants at the Threatened Property, which, upon information and belief, continue to be present and which constitute a continuing trespass on the Threatened Property.

103. Upon information and belief, the contamination caused by Defendants' continuing trespass is reasonably abatable at a reasonable cost. However, despite being ordered by the DTSC to abate and remediate its contamination, Plaintiffs have failed and refused to do so.

104. Upon information and belief, the presence of the contamination, which has resulted from the acts or omissions of Defendants, continues to contaminate and damage the Threatened Property on a daily basis.

105. The intentional, reckless, and/or negligent maintenance of, and operations on, the Source Property by Defendants has, upon information and belief, proximately caused the unauthorized and wrongful deposit of contaminants at the Threatened Property, which continue to be present at the Source Property, and which constitute a continuing trespass.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against each Defendants for:

1. For recovery from Defendants of Plaintiffs' response costs incurred and to be incurred in responding to the releases or threatened releases at the Threatened Property emanating from the Source Property.

  2. For a declaration that Defendants are responsible and liable for and thus must pay all of Plaintiffs' future response costs incurred and to be incurred in responding to the releases or threatened releases at the Threatened Property emanating from the Source Property.

  3. For damages incurred by Plaintiffs due to the contamination at and emanating from the Source Property, including any such contamination that has impacted the Threatened Property.

  4. For preliminary and/or permanent injunctive relief requiring Defendants to abate the imminent and substantial endangerment, nuisance, and trespass in the form of environmental contamination at and emanating from the Source Property including, without limitation, abating any such contamination at the Threatened Property.

  5. For damages incurred by Plaintiffs' due to the subsidence of soil at the Threatened Property caused by Defendants' use, maintenance, and/or actions at the Source Property.

  6. For preliminary and/or permanent injunctive relief requiring Defendants to abate the nuisance of soil subsidence at the Threatened Property caused by Defendants' use, maintenance, and/or actions at the Source Property.

  7. For costs of suit.

  8. For pre-judgment and post-judgment interest as provided by law.

  9. For attorneys' fees as provided by law.

  10. For such other relief as the Court deems just and proper.

DATED: February 28, 2022    GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

            By: */s/ Noah Perch-Ahern*
              NOAH PERCH-AHERN (SBN 262164)

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38, Plaintiffs Karimi and Trans Telecom hereby demand a trial by jury of all claims and issues triable of right by a jury.

DATED: February 28, 2022

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: */s/ Noah Perch-Ahern*
    NOAH PERCH-AHERN (SBN 262164)