# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR MICHAEL KARIMI, ET AL, | Case No.: 2:22-cv-01379-MWC-KS |
| Plaintiffs, | |
| vs. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3)** |
| BEHNAM RAFALIAN, ET AL, | |
| Defendants | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3)**

Plaintiffs Amir Michael Karimi and Trans Telecom Company, Inc. (collectively, "Plaintiffs") and Defendants Behnam Rafalian and Soil Pacific Inc. (collectively "Defendants") appeared for a jury trial before this court on November 4, 2025, which concluded on November 14, 2025. The jury found in favor of Plaintiffs on their negligence and trespass – public and private nuisance claims against Defendants Behnam Rafalian, Roya Akhavan, and Soil Pacific, Inc., found that Defendant Behnam Rafalian and one or more officers, directors, or managing agents acting on behalf of Defendant Soil Pacific engaged in the conduct with malice, oppression or fraud, and awarded plaintiffs compensatory and punitive damages. The parties appeared before this Court for a bench trial on the remaining equitable issues on January 20, 2025, which concluded on January 21, 2025. On February 13, 2026, the parties filed their closing briefs . ECF Nos. 197 ("Pl. Brief") and 198 ("Def. Brief"). Pursuant to Fed. R. Civ. P. 52, the Court renders its Findings of Fact and Conclusions of Law.

## I.     BACKGROUND

This is a civil action seeking the recovery of response costs, damages, injunctive relief, declaratory relief, attorneys' fees, and other costs and relief as a result of environmental contamination of real property. The two properties at issue are located at 5977 Washington Boulevard, Culver City, California 90232 ("Source Property") and 5969 Washington Boulevard, Culver City, California 90232 ("Impacted Property").

Any finding of fact deemed to be a conclusion of law is hereby incorporated into the Conclusions of Law. Any conclusion of law deemed to be a finding of fact is hereby incorporated into the Findings of Fact.

## II.    FINDINGS OF FACT

### A.    Jury Findings

1.    Defendants were negligent.

2.    Defendants' negligence a substantial factor in causing harm to Plaintiffs.

3.    Plaintiffs owned and/or leased the property that is one of the subjects of the litigation.

4.    Defendants intentionally caused volatile organic compounds to enter Plaintiffs' property, or, although not intending to do so, recklessly or negligently caused volatile organic compounds to enter Plaintiffs' property.

5.    Defendants allowed volatile organic compounds to enter Plaintiffs' property without their permission.

6.    Defendants' conduct was a substantial factor in causing actual harm to Plaintiffs.

7.    Defendants, by acting or failing to act, created a condition that was harmful to health.

8.    The condition affected a substantial number of people at the same time.

9.    The condition substantially interfered with Plaintiffs' use or enjoyment of their land.

10.    An ordinary person would have been reasonably annoyed or disturbed by the condition.

11.    The seriousness of the harm outweighed the social utility of Defendants' conduct.

12.    Plaintiffs did not consent to Defendants' conduct.

13.    Plaintiff Amir Michael Karimi ("Karimi") is awarded $805,000 in compensatory damages.

14.    Plaintiff Karimi is awarded $1,600,000 in punitive damages.

**B.    Court Findings**

15.    Default was entered against Roya Akhavan on October 6, 2025.

16.    Volatile organic compounds were deposited, stored, disposed of, placed, or otherwise come to be located at the Source Property.

17.    Testing of soil, soil vapor, and groundwater at the Source Property has revealed concentrations of PCE, TCE, and other hazardous substances in excess of standards promulgated by state and federal environmental agencies.

18.    The California Department of Toxic Substance Control ("DTSC") has exercised jurisdiction over the Source Property.

19.    On March 30, 2007, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order ("ISE Order") to Defendants Rafalian and Akhavan, naming them as responsible parties to address environmental conditions at the Source Property. DTSC found in the ISE Order that the environmental condition of the Source Property poses an imminent and substantial endangerment to human health or the environment.

20.    Groundwater, soil, and soil gas concentrations exceed residential and commercial Regulatory Screening Levels ("RSLs") and Soil Gas Screening Levels ("SGSLs") at the Impacted Property.   These concentrations here are at least 50 times (3,400 ug/m3) above acceptable commercial regulatory levels of 71 ug/m3 for PCE at the Impacted, and almost 150 times (9,800 ug/m3) above acceptable commercial regulatory levels at the Source Property.

21.    Cracks are present at the Impacted Property's ground level. These cracks provide a direct conduit for entry of hazardous vapors into the building.

22.     Groundwater located approximately 20-25 feet below the Impacted Property contains PCE, TCE, and Vinyl chloride, trans-1,2-DCE, 1, 1-7 DCE, 1,1-DCA and cis-1,2,DCE in concentrations as high as 50 times the Maximum Contaminant Limit.

23.     No offsite investigation has been performed by Defendants since the 2007 issuance of the 2007 ISE DTSC Order.

24.     The DTSC has not undertaken, supervised, or approved  any remediation efforts at the Source Property.

25.     Since 2007, the DTSC has issued Notices of Non-Compliance with the 2007 DTSC ISE Order, each confirming its 2007 determinations are still current based on the existing levels of contamination.

26.     Defendants have not complied with the DTSC Order and have not undertaken efforts to comply with the approved cleanup of the site overseen and directed by the DTSC.

27.     It is undisputed that volatile organic compounds are solid or hazardous waste.

28.     Defendants are potentially responsible parties under 42 U.S.C. § 9607(a).

29.     Defendants caused the spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing of volatile organic compounds into the environment.

30.     The release of volatile organic compounds caused Plaintiffs to incur response costs that were necessary under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).

31.     Plaintiff Karimi incurred response or corrective action costs in accordance with CERCLA and the Carpenter-Presley-Tanner Hazardous Substance Account Act (HSSA).

32.    Plaintiff Trans Telecom Company, Inc. ("Trans Telecom") did not incur response or corrective action costs in accordance with CERCLA or the Carpenter-Presley-Tanner Hazardous Substance Account Act (HSSA).

33.    Plaintiff Karimi contacted the DTSC on multiple occasions concerning remediation at the Source Property.

34.    Plaintiff Karimi hired Partner Engineering to conduct a subsurface investigation at the Impacted Property and incurred $16,380 in costs for the site investigation.

35.    Hiring an engineering firm to conduct a subsurface investigation after learning adjacent property is subject to an ISE Order is an activity one would reasonably conduct.

36.    Defendant Rafalian hired Soil Pacific to conduct an investigation at the Source Property and to work with the DTSC concerning site mitigation at the Source Property.

37.    Soil Pacific did not own or operate the Source Property at the time of disposal of any hazardous substance.

38.    Defendant Rafalian relied on Soil Pacific to effectuate the site mitigation.

39.    Defendants' activities on the Source Property have resulted in dewatering the subsurface of the Source Property and the Impacted Property. This has resulted in subsidence of the soil under the building at the Impacted Property.  This soil subsidence has, in turn, caused damage to the land and structures at the Impacted Property.

40.    Defendants have not shown a reasonable basis for apportionment exists.

41.    In closing argument in the liability/compensatory damages portion of the case, Plaintiffs' counsel asked the jury for an award of "$ 4.6 million for the remediation (and) $810,000 for the lost use of rent."

42.    No remediation costs or damages were incurred as of the date of trial.

## III.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

43.    This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331.

44.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

45.    This Court has personal jurisdiction over the parties because the parties are domiciled  within this forum, and the claims at issue are alleged to have occurred in California.

46.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 42 U.S.C. § 9613(b).

### B.    CERCLA (42 U.S.C. § 9601 et seq.) and HSAA (Cal. Health & Safety Code § 25300 (West) et seq.)

47.    CERCLA is the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 et seq.) ("CERCLA") and HSAA is the California Carpenter–Presley–Tanner Hazardous Substance Account Act (Cal. Health & Safety Code § 25300 et seq.) ("HSAA").

48.    Plaintiffs have asserted claims against under CERCLA and HSAA against all defendants and under the Resource Conservation and Recovery Act (RCRA) (42 U.S.C. §6901 et seq.) against Defendants Rafalian and Akhavan.

49.    The requirements to prove cost recovery under CERCLA and HSAA are essentially identical. *United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 1004 (C.D. Cal. 2011) ("The HSAA expressly incorporates the liability standards and defenses set forth in CERCLA"). The Court, therefore, does not treat the HSAA claim separately below. After analyzing the

FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3) - 7

CERCLA claim, the Court will then consider whether Plaintiffs have proven a violation under RCRA.

50.     "CERCLA was enacted to 'provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.' PL 96–510 (HR 7020), PL 96–510, DECEMBER 11, 1980, 94 Stat 2767. It generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed." *3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1357 (9th Cir. 1990); 42 U.S.C. § 9607(a).

51.     "Any person may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to" CERCLA.  42 U.S.C. § 9659.  "The district court shall have jurisdiction in actions brought . . .  to enforce the standard, regulation, condition, requirement, or order concerned . . . , [and] to order such action as may be necessary to correct the violation."  42 U.S.C. § 9659.

52.     "[A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . . , shall be liable for – (a) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; (b) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (c) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss

resulting from such a release; and (d) the costs of any health assessment or health effects study . . .” 42 U.S.C. § 9607(a)(3).

53.    “A person who has incurred response or corrective action costs in accordance with” the HSSA “or the federal act may seek contribution or indemnity from any person who is liable pursuant to” the HSSA. Cal. Health & Safety Code § 79670.

54.    To establish a claim for cost recovery or contribution under CERCLA, a claimant must sufficiently allege: 1) that the defendant is a potentially responsible party under § 9607(a); 2) a release or threatened release of hazardous material occurred 3) the release occurred at a facility as that term is defined under § 9601(9); and 4) the release or threatened release caused the plaintiff to incur response costs that were necessary under CERCLA. See *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir. 1989) (citations omitted).

55.    Plaintiff Trans Telecom cannot establish a claim for cost recovery or contribution under CERCLA or HSSA because it did not incur response costs that were necessary under CERCLA or HSSA.

56.    A facility includes “any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or [has] otherwise come to be located.”  42 U.S.C. § 9601(9).

57.    Release “means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . .” 42 U.S.C.A. § 9601(22).

58.    Hazardous substance “means (A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act, (B) any element, compound, mixture,

FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3) - 9

solution, or substance designated pursuant to section 9602 of [CERCLA], (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act, and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act."  42 U.S.C.A. § 9601(14).

59.    A potentially responsible party under CERCLA includes the owner and operator of a vessel or a facility.  42 U.S.C.A. § 9607(a).

60.    Plaintiff Karimi contends a release occurred at the Source Property, that all Defendants are jointly and severally liable to Plaintiff for the release, and that the site investigation was necessary and consistent with the National Contingency Plan (NCP).

61.    The parties agree that chlorinated solvents like PCE and TCE are CERCLA hazardous substances and that both the Source Property and the Impacted Property constitute "facilities" in the context of CERCLA.

62.    Defendants contend Plaintiff Karimi failed carry his burden to show there was a release from the Source Property that caused Plaintiff's response costs.

63.    Plaintiff Karimi seek two types of cost recovery under CERCLA and HSAA: (1) $16,380 in costs for the site investigation and (2) declaratory relief in the form of a judgment under CERCLA for cost recovery for future work performed consistent with the NCP.

64.    A defendant is not liable under CERCLA for:  (1) an act or omission of a third party other than an employee or agent of the defendant, or other than one whose act or omission

occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant, and (2) if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.  42 U.S.C. § 9607.

65.      Soil Pacific is an arranger for purposes of CERCLA strict liability for environmental contamination pursuant to 42 U.S.C. §9607(a).

66.      CERCLA liability is generally joint and several and a defendant seeking to avoid joint and several liability bears the burden of proving that a reasonable basis for apportionment exists. *Arizona v. City of Tucson*, 761 F.3d 1005, 1011 (9th Cir. 2014).

67.      Remediation costs are recoverable under CERCLA only if necessary. "It is generally agreed that this standard requires that an actual and real threat to human health or the environment exist before initiating a response action."  *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001).

68.      Plaintiff Karimi has established all of the necessary elements of a claim under CERCLA and HSSA and is entitled to cost recovery and injunctive relief.

69.      In light of the jury's finding that Defendants, by acting or failing to act, created a condition that was harmful to health, Plaintiff Karimi is entitled to $16,380 in costs for the site investigation.

70.      The jury awarded Plaintiff Karimi $805,000 in lost profits.  The court did not instruct the jury to consider the amount of future remediation damages and the verdict form did not call for a jury finding on future remediation damages.

FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3) - 11

71.     In addition to cost recovery, Plaintiff Karimi seeks declaratory relief in the form of a judgment under CERCLA for cost recovery for future work performed consistent with the NCP.  Specifically, Plaintiff Karimi requests the deposit of approximately $4.6 million into a trust fund with an administrator of the trust ensuring the funds to be used only for further investigation and remediation of the contamination at issue.  Defendants do not address this request in conjunction with Plaintiff's CERCLA and HSSA claims.

72.     CERCLA does not permit an award of monetary damages to be deposited in escrow to fund future cleanup of contamination.  *Stanton Rd. Assocs. v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

73.     However, CERCLA permits the entry of a "declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613.

74.     The court finds Plaintiff Karimi is entitled to a declaratory judgment on liability for response costs or damages which will be binding on any subsequent action or actions to recover further response costs or damages.

**C.     Resource Conservation and Recovery Act (RCRA) (42 U.S.C. §6901 et seq.).**

75.     Plaintiffs also seek relief against Defendants Rafalian and Akhavan under the RCRA. To obtain injunctive relief under RCRA's citizen suit provision, 42 U.S.C. § 6972(a)(1)(B), a plaintiff must show that (1) the defendant is "any person, . . . including any past or present generator . . . transporter, or . . . owner or operator of the treatment, storage, or disposal facility, (2) who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste, (3) which may present an imminent and substantial endangerment to health or the environment." *Ctr. for Cmty.*

*Action & Env't Just. v. BNSF R. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014). Defendant contends that Plaintiff has failed to establish the existence of a release attributable to defendant, an imminent and substantial endangerment to health or the environment, or a legally authorized remedy.

76. The term "person" as used in the RCRA "means an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body and shall include each department, agency, and instrumentality of the United States." 42 U.S.C. § 6903.

77. Plaintiffs established the existence of a release attributable to defendant.

78. The Ninth Circuit has explained the meaning of "imminent and substantial endangerment," construing it liberally. *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994). Endangerment means "threatened or potential harm and does not require proof of actual harm." *Id.* Imminence "does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present"; indeed, "[a]n 'imminent hazard' may be declared at any point in a chain of events which may ultimately result in harm to the public." *Id.* (citation omitted). Substantial endangerment occurs when the threatened harm is "serious" and there is need for remedial action to avoid the risk of harm. *Id.*

79. Plaintiffs claim they has satisfied the standard for showing imminent and substantial endangerment because since the DTSC issued the 2007 ISE Order, DTSC has issued notices of non-compliance with the Order, each confirming its 2007 determinations are still current based on the existing levels of contamination, but it has not undertaken, supervised, or approved  any remediation efforts at the Source Property.  Plaintiffs also argue that the jury

verdict on the tort causes of action also supports the argument that the imminent and substantial endangerment element has been met.

80.    The court finds that the jury verdict on the tort causes of action does not necessarily mean that the element of imminent and substantial endangerment under the RCRA has been met.

81.    However, the release here has gone unremediated for over 18 years despite DTSC involvement.  Groundwater, soil, and soil gas concentrations exceed residential and commercial Regulatory screening levels ("RSLs") and Soil Gas Screening Levels ("SGSLs") at the Impacted Property; cracks are present in the Impacted Property's ground level and these cracks provide a direct conduit for entry of hazardous vapors into the building; Groundwater located approximately 20-25 feet below the Impacted Property contains PCE, TCE, and Vinyl chloride, trans-1,2-DCE, 1, 1-7 DCE, 1,1-DCA and cis-1,2,DCE in concentrations as high as 50 times the Maximum Contaminant Limit; no offsite investigation has been performed by Defendants since the 2007 issuance of the 2007 ISE DTSC Order; the DTSC has not undertaken, supervised, or approved  any remediation efforts at the Source Property; and since 2007, the DTSC has issued notices of non-compliance with the 2007 DTSC ISE Order, each confirming its 2007 determinations are still current based on the existing levels of contamination.

82.    The court finds Plaintiffs have proven the element of imminent and substantial endangerment under the RCRA has been met in this case because VOCs are being released in concentrations above regulatory limits and Defendants have not complied with the DTSC Order or undertaken efforts to comply with the approved cleanup of the site overseen and directed by the DTSC.

83.    Defendants argue Plaintiffs failed to prove that any release attributable to Defendants caused Plaintiffs to incur recoverable response costs because RCRA liability also requires that Defendants have "contributed to" the "handling, storage, treatment, transportation, or disposal" of a solid or hazardous waste.

84.    Disposal "means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  42 U.S.C. § 6903(3).

85.    "Disposal" is an affirmative act of discarding a substance as waste.  *3550 Stevens Creek Associates*, 915 F.2d at 1362.

86.    The DTSC found contamination on the Source Property migrated to the Impacted Property.

87.    Plaintiffs argue Defendants engaged in affirmative acts of discarding a substance as waste through:  illegal pumping of contaminated groundwater and allowing it to pool on the Source Property and spread onto the Impacted Property; taking actions causing cracking in Plaintiffs' slab, which eventually provided a direct conduit for vapors at the Source Property to impact air in the building located on the Impacted Property; and illegal excavation of contaminated soil at the Source Property.  While these are affirmative acts, they are not affirmative acts of discarding a substance as waste.  Therefore, no "disposal" as defined by the RCRA occurred.

88.    Defendants argue the remedy Plaintiffs request is not available under RCRA. Specifically, Plaintiff seeks injunctive relief a specifying the amount of $4.6 million to be deposited into a trust fund with an administrator of the trust ensuring the funds to be used only

FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3) - 15

for further investigation and remediation of the contamination at issue and an order vesting Plaintiff with the power to control the work performed.

89.      "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste . . . Unlike the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 94 Stat. 2767, as amended, 42 U.S.C. § 9601 et seq. RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards . . . RCRA's primary purpose, rather, is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.' 42 U.S.C. § 6902(b)." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483, 116 S. Ct. 1251, 134 L. Ed. 2d 121 (1996).

90.      "[A] private citizen suing under (the RCRA) could seek a mandatory injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that 'restrains' a responsible party from further violating RCRA." *Meghrig*, 516 U.S. at 484.

91.      Even had Plaintiffs proven a "disposal" under the RCRA, Plaintiffs would not be entitled to the remedy of injunctive relief a specifying the amount of $4.6 million to be deposited into a trust fund with an administrator of the trust ensuring the funds to be used only for further investigation and remediation of the contamination at issue and an order vesting Plaintiff with the power to control the work performed.

**D.     UCL**

92.     Plaintiffs brought their UCL claim against Defendant Rafalian and Defendant Akhavan.

93.     Unfair competition means and includes any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

**1.     Business Act or Practice**

94.     At the outset, the Court must decide whether the conduct at issue in this case constitutes a business act or practice.  Whether particular conduct is a business practice within the scope of § 17200 is a question of fact dependent on the circumstances of each case. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1048 (C.D. Cal. 1998); *Payne v. United California Bank*, 23 Cal. App. 3d 850, 856, 100 Cal. Rptr. 672 (Ct. App. 1972); *People ex rel. Mosk v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 771–772, 20 Cal. Rptr. 516 (Ct. App. 1962)]

95.     Black's Law Dictionary defines "business" as a "commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain. "Business" includes every trade, occupation, and profession.  BUSINESS, Black's Law Dictionary (12th ed. 2024).  Commercial means "[o]f, relating to, or involving the selling of goods or services for profit; COMMERCIAL, Black's Law Dictionary (12th ed. 2024).

96.     Defendant Rafalian and Defendant Akhavan own the Source Property which consists of a lot of approximately 4000 ft$^2$ with an abandoned 1,200 ft$^2$ building.  On March 28, 2007, the DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order ISE Order to Defendants Rafalian and Akhavan, naming them as responsible parties to address environmental conditions at the Source Property. Defendant

Rafalian and Defendant Akhavan hired Soil Pacific to pump groundwater from beneath the Source Property and to excavate soil at the Source Property.  The work was done without permits or regulatory oversight by the DTSC and resulted in dewatering the subsurface of the Source Property and the Impacted Property and subsidence of the soil under the building at the Impacted Property.  This soil subsidence caused and/or exacerbated damage to the land, building, and/or other structures at the Impacted Property.

97.     This conduct is not a commercial enterprise carried on for profit.  Rather, it is conduct engaged in for the purpose of responding to regulatory oversight.  It is not a trade, occupation, or profession.  It does not relate to or involve the selling of goods or services for profit.

### 2.     Unlawful Business Act or Practice

98.     The term unlawful business act or practice includes "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527 (1999) citing *Rubin v. Green*, 4 Cal. 4th 1187, 1200, 847 P.2d 1044 (1993); *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 113, 496 P.2d 817 (1972).

99.     An unlawful business practice or act is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law. (*Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383, 826 P.2d 730 (1992); *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969, 69 Cal. Rptr. 2d 623 (1997); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 351–52, 9 Cal. Rptr. 3d 197 (2004).  "Unlawful business activity" proscribed under § 17200

includes " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Barquis*, 7 Cal. 3d at 113, 101.

100.    Plaintiffs argue that since the jury found Defendants liable for public nuisance and private nuisance pursuant to  Cal. Civ. Code § § 3479, 3480, they are liable under the unlawful prong of the UCL.

101.    If the violation of § 17200 is based on "unlawful" conduct, § 17200 will not reach the challenged conduct if it is not a "business" as defined by the underlying statute. Since neither statute defines the acts forming the basis for liability in this case as business conduct, there is no liability here under the unlawful prong of the UCL.

### 3.    Unfair Business Act or Practice

102.    The term unfair business act or practice "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications, Inc.*, 20 Cal. 4th at 187.

103.    Plaintiff argue that because the jury found Defendants Rafalian and Akhavan are liable for a public nuisance in violation of Cal. Civ. Code § 3480 (West), their practices are a violation of California's public policy of ensuring that a business does not cause a public nuisance.

104.    This conclusion requires the court to take an evidentiary leap over the foundational issue:  whether the conduct here constitutes a business act or practice within the meaning of the UCL.  There is no evidence in the record that Defendants' actions and failures to act in failing to properly and fully investigate and remediate contamination at and emanating from the Source Property constitute and/or constituted business practices.  Plaintiffs' claim under

the unfair prong of the UCL fails for the same reason Plaintiffs' claim under the unlawful prong of the UCL fails.

### 4.    Fraudulent Business Act or Practice

105.    A business practice is fraudulent within the meaning of § 17200 if "members of the public are likely to be deceived." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211, 673 P.2d 660 (1983).  Plaintiffs argue the jury found Defendant Rafalian engaged in fraudulent activities as a predicate to the punitive damages finding and award.  This is inaccurate.  The jury found Defendant Rafalian engaged in conduct with malice, oppression, or fraud.

106.    Plaintiffs' factual arguments that Defendant Rafalian's conduct was fraudulent rest on fraud on the DTSC and/or other government entities, not that members of the public were likely to be deceived.   Moreover, as previously discussed, Plaintiffs have not carried their burden of proving the acts and/or failures to act in this case constitute business activity.  Accordingly, Plaintiffs' UCL claim based on fraudulent business acts or practices fails.

### E.    Common Law Causes of Action

107.    The jury awarded Plaintiffs $0.00 in harm to property damages and awarded Plaintiff Karimi $805,000 in lost profit damages.  In addition to these damages, Plaintiff seeks loss of use and restitution or repair (remediation) costs based on the jury's verdict that Defendants are each liable to Plaintiff for private nuisance, public nuisance, trespass and negligence.  Plaintiffs argue they are entitled to injunctive relief under their common law causes of actions because DTSC is not forcing Defendants to remediate the contamination at either the Source Property or the Impacted Property.

108.    Defendants argue an additional award of injunctive relief creates the risk of double recovery because the jury already awarded damages for Plaintiff's common law causes of action.

109.    CERCLA bars double recovery.  "Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same ... costs" under CERCLA. 42 U.S.C. § 9614(b).  But § 9614(b) does not bar a finding of liability as long as the district court fashions the relief such that the plaintiff will not recover double compensation." *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 477 (9th Cir. 2024).

110.    As previously stated, Plaintiff is entitled to a declaratory judgment on liability for response costs or damages which will be binding on any subsequent action or actions to recover further response costs or damages.

**F.    Attorney Fees**

111.    Plaintiffs have stated their intention to file a motion for attorney fees.  Plaintiffs may file a request for fees in accordance with the Federal Rules of Civil Procedure and the Central District of California Local Rules.

**IV.    CONCLUSION**

112.    The Court finds in favor of Plaintiff Karimi and against all Defendants on the CERCLA, HSSA, and common law claims and awards Plaintiff Karimi $16,380 in costs for site investigation and a declaratory judgment on liability for response costs or damages which shall be binding on any subsequent action or actions to recover further response costs or damages.

113.    The Court finds in favor of Defendants and against Plaintiffs on the RCRA claim;

114.    The Court finds in favor of Defendants and against Plaintiffs on the UCL claim;

115.    Plaintiffs are ordered to prepare, serve, and file a proposed judgment encompassing all three phases of the trial in this matter and including judgment on the default of Defendant Roya Akhavan within 3 court days.  Plaintiff shall also lodge a Word version with chambers concurrently with filing.  Objections to the proposed judgment are due 5 court days after the proposed judgment is filed.  The court will enter the judgment thereafter.

IT IS SO ORDERED.

DATED:  June 24, 2026

_____
Honorable Michelle Williams Court
UNITED STATES DISTRICT COURT
JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW (TRIAL PHASE 3) - 22